United States District Court
Southern District of Texas
**ENTERED**
August 11, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BRANDI BRYANT, *as Next Friend and* *On Behalf Of G.L., a minor, et al.,* | § § | |
| Plaintiffs | § § | |
| v. | § § | CIVIL ACTION NO. H-21-1547 |
| DAYTON INDEP. SCH. DIST., *et al.,* | § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

This case arises from the alleged mistreatment of a Dayton ISD student by teachers and administrators.  The parents allege that the school district and several of its employees bullied their son and discriminated against him due to his dyslexia, violating his federal statutory and constitutional rights.  Dayton ISD and the employees have moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6), the parents have responded, and the defendants have replied.

Based on the motion, response, reply, the pleadings, and the applicable law, the court grants the motion in part and denies it in part.  The claims for intentional disability discrimination under the ADA and the Rehabilitation Act against Dayton ISD remain.  All the other claims are dismissed.  The reasons are explained in detail below.  A scheduling and status conference is set for **August 27, 2021, at 10:00 A.M. in Courtroom 11B.**

# I.     Background[1]

In May 2019, while G.L. was a Dayton ISD middle school student, he broke his collarbone, making him unable to participate in school summer football activities.   (Docket Entry No. 6 at ¶ 15).   G.L. tried playing football in August 2019, but he still felt pain and worried about reinjury.   After G.L. transferred out of the football program, the coaches allegedly called him a "quitter," told other students that he was "weak" and "a 'pussy,'" encouraged the football team not to speak to him, and told him that "he could not stand in certain areas of the general school bus loading area with his brother because it was for 'football players only.'" (*Id.*).   Brandi and Jeremy Bryant, G.L.'s parents, met with Roderick Bankhead, the head football coach, and complained about the bullying, but no action was taken.   (*Id.*).

G.L. had been diagnosed with dyslexia. He had established with the school a plan for accommodating his dyslexia under with the Rehabilitation Act of 1973.   That plan called for G.L. to receive printed notes for his classes and extra time to complete classwork and exams.   The Bryants allege that, beginning in August 2019, G.L.'s math teacher, Christina Luburich, did not provide either accommodation.   Instead, Luburich repeatedly told G.L. that dyslexia was not a "real disability." (*Id.* at ¶ 16).   Luburich also told other students that G.L. cheated on his homework and denied him access to class-tutoring sessions.   (*Id.*).   The Bryants repeatedly emailed Mechelle Perkins, the eighth-grade assistant principal, asking to meet with her and Luburich.   (*Id.* at ¶ 17).   Perkins did not respond, no meeting occurred.   Months later, G.L. was moved to a different teacher's class.   (*Id.*).

---

[1]  The facts presented come from the Bryants' amended complaint.   (Docket Entry No. 6).   For purposes of the defendants' Rule 12(b)(6) motion, the court accepts the Bryants' well-pleaded factual allegations as true.   *See Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014).   For purposes of the defendants' Rule 12(b)(1) motion, the court accepts the Bryants' factual allegations to the extent they are not controverted by the record evidence.   *See Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986).

In August 2020, G.L. became a student at Dayton High School.  That month, unnamed school individuals cited G.L. for improperly wearing his face mask and took other allegedly unwarranted disciplinary action against him.  (*Id.* at ¶ 18).  In October 2020, the Bryants moved G.L. to virtual learning "to help G.L. escape the retaliatory punishments and bullying he was receiving."  (*Id.*).  Because of his dyslexia, G.L. struggled with virtual learning, but he feared returning to school and being bullied.

The amended complaint alleges that, in late November 2020, while near the Dayton High School parking lot after school hours, another student, J.M., harassed and assaulted G.L.  J.M. "began touching . . . G.L. and other students,"  then told G.L., "I really want to kiss you right now" and "I want to suck your dick."  (*Id.* at ¶ 19).  When G.L. tried to leave, J.M. followed him, "asking about religious and political beliefs and continu[ing] to sexually harass" G.L.  (*Id.*).  G.L. "begged for help from a teacher that passed by, Miss Arce," who "flippantly ignored [his] pleas."  (*Id.*).  J.M. began touching G.L. and other nearby students, grabbed G.L.'s belongings, threw them, chased G.L. "for several minutes," and then punched G.L. in the face.  (*Id.* at ¶ 20).  G.L. left.

In December 2020, the Bryants met with Brad Hadnot, whose position at Dayton ISD is not clear from the amended complaint.  Hadnot accused G.L. of bullying J.M. based on his sexual orientation and punished G.L. with 45 days of "disciplinary alternative education plan."  (*Id.* at ¶ 21).  J.M. was not punished.  When the Bryants told Hadnot that it was J.M. who harassed and assault G.L., Hadnot "stated this was . . . G.L.'s word versus J.M.'s word."  (*Id.*).  Hadnot did not let the Bryants speak to the school-resources officer about J.M.'s harassment and assault.  Nor did Hadnot follow Dayton ISD's policies for reporting sexual harassment.  (*Id.*).

The next day, the Bryants filed a "Level 1" appeal from Hadnot's decision.  (*Id.* at ¶ 22). The Bryants met with Geoff McCracken, the high school principal, the following day.  McCracken

determined that G.L.'s 45-day punishment was excessive and reduced the punishment to 25 days. (*Id.* at ¶ 23).

A few weeks later, the Bryants filed a "Level 2" appeal from Hadnot's suspension order, as reduced.  (*Id.* at ¶ 25).  Because the appeal was faulty, the Bryants refiled it in January 2021.  A hearing was held one week later.  One week after that hearing, "G.L. was withdrawn from [Dayton ISD]."  (*Id.* at ¶ 26).

In February 2021, the Bryants had not received a response to their "Level 2" appeal, and they submitted a "Level 3" appeal.  (*Id.* at ¶ 27).  One week later, Dayton ISD's counsel emailed the Bryants' counsel, stating that the Bryants did not have standing to appeal G.L.'s punishment because he was no longer a Dayton ISD student.  (*Id.* at ¶ 28).  Dayton ISD did not hold a "Level III hearing."  (*Id.*).

 In May 2021, the Bryants sued Dayton ISD and McCracken, Hadnot, Luburich, and Dr. Jessica Johnson, whose conduct and role at Dayton ISD are not included in the complaint.  The Bryants assert several claims under state tort law and federal statutes.  They seek actual, consequential, statutory, and exemplary damages; declaratory and injunctive relief; and attorney's fees.  (*Id.* at ¶¶ 45, 66).  The defendants moved to dismiss the complaint, the Bryants amended, and the defendants moved to dismiss the amended complaint.  (Docket Entry No. 14).

## II.    **The Legal Standards**

### A.    **A Rule 12(b)(1) Motion to Dismiss**

Under Rule 12(b)(1), "a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation marks omitted).  The plaintiff has the burden to establish subject-matter jurisdiction.

*Id.* "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986).

### B.     A Rule 12(b)(6) Motion to Dismiss

When reviewing a motion to dismiss, the court "accept[s] all well-pleaded facts as true and view[s] all facts in the light most favorable to the plaintiff." *Thompson v. City of Waco, Texas*, 764 F.3d 500, 502 (5th Cir. 2014).  The court does not accept the plaintiff's legal conclusions as true.  *Id.*  Under Rule 12(b)(6), a federal court dismisses a complaint if it fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6); *see also* FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Thompson*, 764 F.3d at 503 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Thompson*, 764 F.3d at 503 (when evaluating plausibility, the court does not "evaluate the plaintiff's likelihood of success" (internal quotation marks omitted)).

When a complaint fails to state a claim, the court should generally give the plaintiff a chance to amend before dismissing the action with prejudice, unless amendment would be futile.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Amendment is futile if an amended complaint would still fail to state a claim.  *See Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 438 (5th Cir. 2019); *Bernegger v. Dep't of Revenue*, 785 F. App'x 209, 211 n.1 (5th Cir. 2019).

## III.  Analysis

The defendants' motion to dismiss characterizes several arguments as jurisdictional.  For example, the motion seeks to dismiss federal statutory claims for lack of subject-matter jurisdiction because the causes of action do not exist or qualified immunity applies.  (Docket Entry No. 14 at 7–8, 11–13).  Those are not jurisdictional arguments.  Rather, they are arguments that the amended complaint fails to state claims for which relief may be granted.  Those arguments are properly addressed under Rule 12(b)(6), not Rule 12(b)(1).  *See S.C. v. Round Rock Indep. Sch. Dist.*, No. A-19-CV-1177-SH, 2020 WL 1446857, at *4 (W.D. Tex. Mar. 25, 2020) (construing an argument under Rule 12(b)(6) instead of Rule 12(b)(1), which the moving party had relied on).

The amended complaint asserts the following claims:

- the individual defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

- the individual defendants violated G.L.'s constitutional rights to equal protection and due process, in violation of 42 U.S.C. § 1983;

- the individual defendants are liable for intentionally inflicting emotional distress on G.L.;

- Dayton ISD violated Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act;

- Dayton ISD created a hostile educational environment, in violation of the Rehabilitation Act; and

- Dayton ISD and the individual defendants are liable for gross negligence for hiring and supervising teachers and coaches.

6

(Docket Entry No. 6).

The amended complaint also includes the following:

- an "application and request for declaratory relief" based on Dayton ISD's alleged failure to follow its rules and procedures, as well as state and federal law, by not punishing J.M., punishing G.L., and not investigating G.L.'s allegations of harassment and assault, (Docket Entry No. 6 at ¶¶ 42–43);

- an "application for temporary injunction," asking the court to "issue a temporary injunction against Defendants requiring it to rescind the transfer order requiring Plaintiff G.L. to attend [Dayton ISD's] alternative school and return Plaintiff G.L. to a Texas public high school of his choice to continue his education in person and he be able to participate in extracurricular activities during the pendency of this cause of action in order to maintain the status quo," (*Id.* at ¶ 45); and

- an argument that the defendants have misapplied the Family Education Rights and Privacy Act, (*Id.* at ¶¶ 48–49).

The defendants argue that these claims must be dismissed. (Docket Entry No. 14). Each argument is addressed in turn.

## A.      The Rehabilitation Act Claim Against the Individual Defendants

The defendants argue that the Rehabilitation Act claim applies only to entities and programs that receive federal financial assistance, not to individuals. (Docket Entry No. 14 at 7–8). The Bryants did not respond to this argument.

A party cannot be liable under § 504 of the Rehabilitation Act unless it receives federal funding. *See Flynn v. Distinctive Home Car, Inc.*, 812 F.3d 422, 430 (5th Cir. 2016) ("a plaintiff may not sue her supervisor individually for employment discrimination under Section 504 of the Rehabilitation . . . because the individual supervisor does not herself receive federal financial assistance." (citing *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999))). The amended complaint does not allege that the individual defendants receive federal funding. *See In re FEMA Trailer*, 668 F.3d at 286 (the plaintiffs have the burden of showing that subject-matter jurisdiction exists).

The amended complaint fails to state a claim against those defendants under the Rehabilitation Act.

The Bryants' Rehabilitation Act claim against the individual defendants is dismissed. The defendants previously raised its argument against that claim in their motion to dismiss the original complaint, (Docket Entry No. 5 at 8), and the Bryants neither responded to the argument nor addressed the issue in their first amended complaint, (Docket Entry Nos. 6, 7). The claim is deficient in ways that cannot be addressed by further amendment, and it is dismissed, with prejudice.

**B.      The Intentional Disability Discrimination Claims Against Dayton ISD**

The amended complaint alleges that Dayton ISD discriminated against G.L. based on his disability, in violation of the ADA and the Rehabilitation Act. The defendants argue that these claims must be dismissed because the Bryants did not administratively exhaust them and because the amended complaint does not allege sufficient facts to state a claim. The court addresses each argument in turn.

**1.      Administrative Exhaustion**

"The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education'—more concisely known as a FAPE—to all children with certain physical or intellectual disabilities." *Harrison v. Klein Indep. Sch. Dist.*, No. 20-20115, 2021 WL 1305871, at *2 (5th Cir. Apr. 7, 2021) (per curiam) (quotation marks omitted). The Supreme Court in *Fry v. Napolean Cmty. Sch.*, 137 S. Ct. 743 (2017), discussed the overlap of the ADA, the Rehabilitation Act, and the IDEA, and the scope of the IDEA's administrative-exhaustion requirement. The Court concluded that administrative exhaustion under the IDEA "is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the

IDEA's core guarantee—what the Act calls a 'free appropriate education.'" *Id.* at 748 (quoting 20 U.S.C. § 1412(a)(1)(A)).  "A court deciding whether [the IDEA's exhaustion requirement] applies must therefore examine whether a plaintiffs' complaint[] . . . seeks relief for the denial of an appropriate education." *Id.* at 755.

The Supreme Court in *Fry* instructed that, in determining whether "the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination," courts may consider whether:  (a) "the plaintiff could have brought essentially the same claim if the alleged conduct occurred at a public facility that was not a school—say, a public theater or library"; (b) "an adult at the school—say an employer or visitor—[could] have pressed essentially the same grievance"; and (c) the plaintiff "previously invoked the IDEA's formal procedures to handle the dispute." *Id.* at 756–57.  In *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 999 (2017), the Court further explained that, "[t]o meet its substantive obligation under the IDEA, a school must offer an [individualized education program] reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

*Fry* and *Endrew* support the conclusion that the ADA and Rehabilitation Act claims in this case are for disability discrimination and not for the denial of a free appropriate public education. The amended complaint does not allege that G.L. is entitled to, or a recipient of, an individualized education program, or that Dayton ISD failed to put an IEP in place for him.  The accommodations that Luburich allegedly denied G.L. were for additional time to complete classwork and for printed class notes.  Denying those accommodations is not equivalent to denying the free appropriate public education that the IDEA mandates, and claims based on the denial of the first are not equivalent to claims based on the denial of the second.

9

The amended complaint overwhelmingly focuses on Luburich's alleged conduct toward and about G.L. based on his dyslexia.  The amended complaint alleges that Luburich made insulting comments to and about G.L.; she "bullied" him; she "insisted that . . . dyslexia [is] not a 'real disability'"; and she subjected him to "intentional and irrational abuse."  (Docket Entry No. 6 at ¶¶ 16–17).  The amended complaint alleges that:

> G.L. was . . . discriminated against by reason of his disability.  Upon information and belief, discovery in this case will show that teachers made fun of him demonstrating through their words and actions that they discriminated against . . . G.L. based on his dyslexia.  This belief is based in part on actions of Luburich.

(*Id.* at ¶ 40).  These allegations do not show that the "gravamen" of the discrimination claims is the denial of a free appropriate public education.  Rather, the allegations present claims for intentional discrimination based on G.L.'s disability.  Although the amended complaint includes allegations that Luburich denied G.L. two accommodations the school had agreed to provide him, those allegations are not central to the discrimination claims or the denial of the accommodations.  *See William V. as next friend of W.V. v. Copperas Cove Indep. Sch. Dist.*, 826 F. App'x 374, 378 (5th Cir. 2020) (the IDEA's "core substantive requirement is that schools design and adhere to an IEP for each disabled student"); *S.C.*, 2020 WL 1446857, at *6–7 ("the inquiry is not whether a FAPE is potentially implicated; it is whether the 'gravamen' or 'essentials' of the complaint concern the denial of a FAPE").

One of the Supreme Court's examples in *Fry* supports the conclusion that the disability discrimination claims here are not for the denial of a free appropriate public education:

> [S]uppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. . . . Here too, the suit could be said to relate, in both genesis and effect, to the child's education.  But . . . the substance of the plaintiff's claim is unlikely to involve the adequacy of special education—and thus is unlikely to require exhaustion. . . . A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse—as could an adult subject to similar

treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

*Fry*, 137 S. Ct. at 756 n.9 (internal citation omitted).

Although the Court's example is more extreme than the conduct alleged in this case, its reasoning applies. The amended complaint alleges that Luburich harassed G.L. based on his disability. Similar treatment in other public facilities could give rise to essentially the same claim.

Finally, the Bryants did not seek administrative relief under the IDEA, which further shows that the denial of a free appropriate public education is not the basis of their claims. *See T. B. by & through Bell v. Nw. Indep. Sch. Dist.,* 980 F.3d 1047, 1052 (5th Cir. 2020) ("[the plaintiff's] resort to the IDEA's administrative procedures before filing suit is a strong indicator that the gravamen of his complaint is in the denial of a [free appropriate public education]").

The gravamen of the intentional disability discrimination claims is that Luburich harassed G.L. based on his disability, not that Dayton ISD denied G.L. a free appropriate public education. The IDEA's administrative-exhaustion requirement does not apply. The defendants' motion to dismiss on this ground is denied.

### 2.     The Factual Allegations

The defendants argue that the amended complaint does not allege sufficient facts that could show that Dayton ISD intentionally discriminated against G.L. (Docket Entry No. 14 at 18, 22). The defendants focus on the Bryants' hostile-educational-environment claim. (*Id.* at 18–23).

"Both the ADA and § 504 [of the Rehabilitation Act] generally prohibit discrimination against persons with disabilities. *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416–17 (5th Cir. 2021) (citation omitted). "Claims brought under § 504 or the ADA, or both, are subject to the

same analysis," because the "only material difference between the two provisions lies in their respective causation requirements." *Id.* (citations omitted); *see Phillips v. Prator*, --- F. App'x --, 2021 WL 3376524, at *2 (5th Cir. Aug. 3, 2021) ("Section 504 of the Rehabilitation Act prohibits essentially identical conduct, so the two provisions are interpreted in tandem." (citation omitted)).

To avoid dismissal, the complaint must allege facts sufficient to show that:  (1) G.L. is a "qualified individual"; (2) he is "being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination is by reason of his disability." *T.O.*, 2 F.4th at 417 (quotation marks and citations omitted).  The complaint must allege facts sufficient to plausibly claim "that the 'school district . . . refused to provide reasonable accommodations for [G.L.] to receive the full benefits of the school program.'" *Hernandez v. Fort Bend ISD*, No. 19-915, 2019 WL 1934674, at *12 (S.D. Tex. May 1, 2019) (quoting *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017)).

The amended complaint does not allege that Dayton ISD refused to provide G.L. with reasonable accommodations for his disability.  The amended complaint alleges that G.L. was "a Section 504 services student" who received accommodations under a "Section 504 Plan."  (Docket Entry No. 6 at ¶ 16).  The amended complaint does not allege that G.L. or his parents sought or were denied any additional accommodations from Dayton ISD.  The amended complaint does not state a direct claim of intentional disability discrimination against Dayton ISD.

"The ADA and Rehabilitation Act are vicarious liability statutes, meaning the [school district] can be held liable for discrimination by [its] employee[s]." *Phillips, next friend of J.H. v. Prator*, --- F. App'x ---, 2021 WL 3376524, at *4 (5th Cir. Aug. 3, 2021) (citing *T.O.*, 2 F.4th

at 417).  An employee's failure to provide reasonable accommodations can make the employer liable for disability discrimination.  *See id.* at *5 (the plaintiff "stated a plausible claim of intentional discrimination against the Sheriff's Office based on [a deputy's] conduct").  The amended complaint alleges that G.L. has a disability that the school and Luburich knew about, the school committed to provide him accommodations, Luburich knew about those accommodations, and she intentionally refused to provide them.  Those allegations state a plausible claim of intentional discrimination under the ADA and the Rehabilitation Act against Dayton ISD, based on Luburich's conduct.  The defendants' motion to dismiss is denied as to those claims.

### C.    The Hostile-Educational-Environment Claim against Dayton ISD

The amended complaint alleges that Dayton ISD violated the Rehabilitation Act by creating a "hostile educational environment."  (Docket Entry No. 6 at ¶ 64).  The Fifth Circuit has not determined whether hostile-educational-environment claims are cognizable under the Rehabilitation Act.  *See Harrison*, 2021 WL 1305871, at *6 n.6 ("Because we find the deliberate indifference element unmet here, we need not determine whether our precedent supports a hostile educational environment claim under the ADA or Rehabilitation Act.").  In *C.C. v. Hurst-Fuless-Bedford Indep. Sch. Dist.*, 641 F. App'x 423, 426 (5th Cir. 2016), the Fifth Circuit stated that a plaintiff must allege the following to plead a hostile-environment claim under the Rehabilitation Act:

> (1) [the plaintiff] was an individual with a disability, (2) [the plaintiff] was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) [the defendant] knew about the harassment, and (5) [the defendant was] deliberately indifferent to the harassment.

(brackets altered) (quoting *Estate of Lance,* 743 F.3d at 996). The Fifth Circuit also requires "facts creating an inference of professional bad faith or gross misjudgment." *Id.* (quotation marks omitted).

To the extent that a hostile-educational-environmental claim under the Rehabilitation Act is cognizable, the defendants argue that the claim must be dismissed because the amended complaint does not allege facts that could show that Luburich sufficiently harassed G.L. or that Dayton ISD was deliberately indifferent to the harassment. (Docket Entry No. 14 at 20–22). Both arguments are addressed below.

### 1.    The Extent of the Harassment

To plead a hostile-environment claim, a complaint must allege facts that could plausibly show continuous, nonepisodic abuse. *Thymes v. AT&T Mobility Servs., LLC*, No. 6:19-CV-00090, 2019 WL 1768311, at *8 (W.D. La. Mar. 19, 2019) (citation omitted), *report and recommendation adopted*, No. 6:19-CV-00090, 2019 WL 1757864 (W.D. La. Apr. 18, 2019). The alleged harassment must have been so pervasive or severe that it "altered [G.L.'s] conditions of [education] and create[d] an abusive [educational] environment)." *Buckhanan v. Shinseki*, No. 3:13-cv-278, 2013 WL 5517903, at *7 (S.D. Miss. Oct. 3, 2013) (quoting *Hiner v. McHugh*, 546 F. App'x 401, 408 (5th Cir. 2013) (per curiam)).

In determining whether the alleged harassment is sufficiently pervasive or severe as to state a claim for a hostile educational environment, the court applies "the principles expressed in employer-employee and student-student [harassment] claims." *Jose v. Northside Indep. Sch. Dist.*, No. 19-0393, 2021 WL 1111150, at *6 (W.D. Tex. Mar. 23, 2021). Adjusting the factors used to determine if workplace harassment is sufficiently pervasive or severe results in the following considerations:

(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; (4) whether the conduct interferes with [educational] performance; and (5) whether the complained-of conduct undermines the plaintiff's [educational] competence.  The alleged harassment must be so severe and pervasive that it destroys the [student's] opportunity to succeed in the [school], and it must be more than rude or offensive comments, teasing, or isolated incidents.

*Sapp v. Potter*, No. 1:07-CV-00650, 2012 WL 3890259, at *23 (E.D. Tex. July 26, 2012), *report and recommendation adopted*, No. 1:07-CV-650, 2012 WL 3890257 (E.D. Tex. Sept. 7, 2012), *aff'd,* 539 F. App'x 590 (5th Cir. 2013); *Buckhanan*, 2013 WL 5517903, at *7 (citations omitted) (quoting *Hiner*, 546 F. App'x at 408).

The defendants cite *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500 (5th Cir. 2002), to argue that the harassment the Bryants alleged is not sufficiently pervasive or severe to state a hostile-environment claim.  In that case, the plaintiff alleged that his supervisor "told [the plaintiff] that he did not believe [that the plaintiff] was disabled," "made derogatory comments . . . about his diagnosis and work recommendations," "made it difficult for [the plaintiff] to attend therapy sessions," "told other workers that they would have to work more overtime because of [the plaintiff]," and threatened to terminate the plaintiff because of his disability-based workplace restrictions.  *Id.* at 502–03.  Because "the facts clearly demonstrate[d] that [the supervisor's] acts were not sufficiently pervasive or severe," the Fifth Circuit  upheld the district court's grant of judgment as a matter of law on the hostile-work-environment claim.  *Id.* at 503.

The Bryants respond by arguing that Luburich's harassment of G.L. was so pervasive and severe that Dayton ISD removed G.L. from Luburich's classroom.  (Docket Entry No. 16 at 17).  Even with the other allegations in the amended complaint, that is insufficient.  Although the amended complaint alleges that Luburich harassed G.L. "for months," (*id.* at ¶¶ 16–17, 64), it does not allege that the harassment affected G.L.'s education.  The amended complaint broadly alleges

15

that "G.L. was denied educational opportunities because of Luburich's actions," but it does not identify those opportunities.  Luburich allegedly denied G.L. access to tutoring sessions and his Rehabilitation Act accommodations of extra time to complete his work and receive printed class notes.  (*Id* at ¶ 64).  But the amended complaint does not tie that denial to an effect on G.L.'s educational performance, competence, or opportunities.  The alleged incidents of rude and offensive comments are insufficient for a hostile-educational-environment claim.  This case is sufficiently similar to *Soledad* for its reasoning to apply.

### 2.    Deliberate Indifference

The defendants argue that, even if the amended complaint alleged sufficiently pervasive or severe harassment, the hostile-educational-environment claim would have to be dismissed because the amended complaint does not sufficiently allege that Dayton ISD was deliberately indifferent to the harassment.  (Docket Entry No. 14 at 21–22).  The court agrees.

"Deliberate indifference is a 'high bar.'" *Harrison*, 2021 WL 1305871, at *4 (quoting *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011)).  "Because deliberate indifference is a lesser form of intent rather than a heightened degree of negligence, neither negligent nor merely unreasonable responses are enough." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019) (internal quotations and citations omitted).  "Rather, to clear that 'high bar,' a response must be 'clearly unreasonable in light of the known circumstances.'" *Harrison*, 2021 WL 1305871, at *4 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

The amended complaint alleges that Dayton ISD was deliberately indifferent to Luburich's alleged harassment of G.L. because, after the Bryants "complained' and "reported the abusive environment" to an assistant principal, Dayton ISD did not "immediately" investigate and address

16

the issue.  (Docket Entry No. 6 at ¶ 17).  The amended complaint alleges that the assistant principal "failed" to investigate the allegations of harassment and that Dayton ISD "fail[ed] to respond adequately to the misconducted[, which] resulted in the teacher continuing to spread lies and to bully . . . G.L."  (*Id.* at ¶¶ 36, 64).  The amended complaint alleges that, after "months of [Luburich's] abuse, . . . G.L. was moved to a different teacher's class to escape the intentional and irrational abuse."  (*Id.* at ¶ 17).

The amended complaint does not allege facts sufficient to show that Dayton ISD was deliberately indifferent to G.L.'s allegations of harassment.  The amended complaint broadly alleges that Dayton ISD, through an assistant principal, did not act quickly enough to address the harassment allegations and that this delay shows deliberate indifference.  These alleged facts do not show that Dayton ISD, or its employees, made a "clearly unreasonable" decision in response to the situation.  *Harrison*, 2021 WL 1305871, at *4 (quotation marks omitted).  Even if the school district's delay was negligent or unreasonable, that could not establish deliberate indifference.  *See L.F.*, 915 F.3d at 369.

The Bryants have not alleged sufficient facts to plead a plausible claim either that G.L. endured pervasive and severe harassment or that Dayton ISD acted with deliberate indifference.  The hostile-educational-environment claim is dismissed, with prejudice, because amendment would be futile.

### D.     The Tort Claims

The amended complaint asserts two categories of tort claims:  (1) a gross-negligence claim against all of the defendants; and (2) a claim for intentional infliction of emotional distress against the individual defendants.  (Docket Entry No. 6 at ¶¶ 50–60).  The defendants argue that the court

Case 4:21-cv-01547   Document 19   Filed on 08/11/21 in TXSD   Page 18 of 26

lacks subject-matter jurisdiction over those claims because of § 101.106(e) and § 101.051 of the Texas Civil Practice and Remedies Code. The court agrees.

Under Texas law, Dayton ISD is a "governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.001(3)(b). "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Kerrville Indep. Sch. Dist. v. Botkin*, No. 04-07-00733-CV, 2008 WL 312788, at *1 (Tex. App.—San Antonio Feb. 6, 2008, pet. denied) (mem op) (quoting *Dallas Area Rapid Transit v. Whitley,* 104 S.W.3d 540, 542 (Tex. 2003)). "If the plaintiff fails to do so, the trial court lacks subject matter jurisdiction." *Id.*

Section 101.106(e) of the Texas Tort Claims Act states that "[i]f a suit is filed under [the Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). Citing that provision, Dayton ISD has requested that the individual defendants be dismissed "from any claims sounding in state law." (Docket Entry No. 14 at 10). Because the Bryants have sued Dayton ISD and its employees under state tort law, the court must dismiss, with prejudice, the tort claims against the individual defendants. *Klassen v. Gaines Cty.*, No. 11-19-00266-CV, 2021 WL 2964423, at *3 (Tex. App.—Eastland July 15, 2021, no pet.) (dismissal of the plaintiff's state-law claims with prejudice under § 101.106(e) was appropriate).

Section 101.051 of the Texas Tort Claims Act limits the tort liability of a school district to causes of action involving "motor vehicles." TEX. CIV. PRAC. & REM. CODE § 101.051. The gross-negligence claim against Dayton ISD does not involve a motor vehicle; Dayton ISD is immune to that claim. *See Dallas Cty. Sch. v. Vallet*, No. 05-16-00385-CV, 2016 WL 7163824, at *2 (Tex. App.—Dallas Dec. 8, 2016, no pet.) (mem. op.) ("School districts are immune from suit for all torts under the TTCA except in suits involving the operation or use of motor vehicles."). The

gross-negligence claim against Dayton ISD is dismissed, with prejudice, because amendment would be futile.

### E.      The FERPA Claim

The amended complaint alleges that the defendants violated the Family Education Rights and Privacy Act by not providing security camera footage of the November 2020 incident involving G.L. and J.M.  (Docket Entry No. 6 at ¶¶ 48–49).  The defendants argue that the claim must be dismissed because FERPA does not establish enforceable individual rights.  (Docket Entry No. 14 at 11).  The court agrees.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights").  The FERPA claim is dismissed, with prejudice.

### F.      The § 1983 Claims

The defendants argue that the Bryants' § 1983 claims against Dayton ISD and against the individual defendants in their official capacities must be dismissed.  (Docket Entry No. 14 at 14–18).  But the amended complaint does not assert those claims.  The Bryants removed them when they amended.  (*See* Docket Entry No. 6 at 1–3 (suing Dr. Jessica Johnson, Geoff McCracken, Brad Hadnot, and Christina Luburich in their individual capacities)).  The motion to dismiss as moot as to those claims.

The amended complaint asserts § 1983 claims against the individual defendants in their individual capacities for violating G.L.'s due-process and equal-protection rights.  (Docket Entry No. 6 at ¶¶ 29–34, 38, 61–63).  The amended complaint alleges that the individual defendants violated G.L.'s equal-protection rights because Luburich "treated . . . G.L. different from students who did not need accommodations under Section 504 [of the Rehabilitation Act]" and harassed G.L. based on his disability.  (Docket Entry No. 6 at ¶¶ 32–33).

The defendants first argue that the amended complaint asserts a "class of one" equal-protection claim rather than a "traditional" equal-protection claim.  (Docket Entry No. 14 at 15).  The court agrees. The amended complaint does not allege that the individual defendants broadly discriminated against individuals with disabilities.  Instead, it alleges that G.L. was singled out and harassed due to his disability.  That is a "class of one" equal-protection claim.  That conclusion is supported by the Bryants' response to the motion to dismiss, in which they argue that "Luburich knew of G.L.'s protected status under § 504 [of the Rehabilitation Act] and intentionally discriminated against him because of his disability."  (Docket Entry No. 16 at 13).

To plead a "class of one" equal-protection claim, the Bryants must allege facts sufficient to show that G.L. "was intentionally treated differently from others similarly situated" and "there was no rational basis for any such difference."  *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (quotation marks and citations omitted).  The amended complaint does not allege that there are similarly situated students—that is, students with dyslexia—who Luburich, or another defendant, treated better than G.L.  The amended complaint does not state an equal-protection claim.

The amended complaint alleges that the individual defendants violated G.L.'s procedural due process rights because "[c]hildren are entitled to free public education[, and] [w]hen that right is taken away by removing them from school because of punishment they have a right to a proper due process hearing before removal," which was not provided.  (Docket Entry No. 6 at ¶ 29).  The amended complaint alleges that the individual defendants "were aware" that G.L. was entitled to three hearings on his appeal of Hadnot's decision to suspend G.L. for 45 days, reduced to 25 days, and that the defendants did not provide those hearings.  (*Id.* at ¶ 31).  The amended complaint also alleges that Dayton ISD failed to provide a "Level 3 appeal," and that the individual defendants'

"actions and inaction showed a reckless or callous disregard of, or indifference to," G.L.'s rights. (*Id.* at ¶¶ 61, 63).

The amended complaint does not allege sufficient facts to plead a procedural due-process claim against the individual defendants.  First, it does not allege that Johnson or Luburich acted, or failed to act, in a way related to the alleged due-process violation.  The amended complaint identifies only Hadnot, McCracken, and Dayton ISD's counsel as the individuals involved in suspending G.L.  Second, the amended complaint alleges that G.L. received two appellate hearings after Hadnot suspended G.L., undercutting a claim that he was denied any appellate hearing.  At most, the amended complaint alleges that G.L. was denied a "Level 3" hearing.  Third, the amended complaint alleges that G.L. withdrew from Dayton ISD while his third appeal was pending, which made his appeal moot.  The amended complaint does not allege that Dayton ISD or its employees made G.L. withdraw.  Declining to hold a hearing appealing the suspension of a student who is no longer enrolled in the school district is not a violation of due process.

The defendants also argue that, even if the amended complaint sufficiently pleaded a claim that the individual defendants violated G.L.'s constitutional rights to due process or equal protection, qualified immunity would apply.  Qualified immunity "protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *T.O.*, 2 F.4th at 413 (quotation marks omitted).  "Once the defense of qualified immunity has been asserted, the plaintiff has the burden of demonstrating that (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time." *Id.* (quotation marks omitted).[2]  The defendants argue that the amended complaint does not allege facts showing that the individual defendants acted contrary to clearly established law.

---

[2]  Although the Fifth Circuit has applied the qualified immunity defense to ADA and Rehabilitation Act claims, *see Clark v. Woods*, 275 F.3d 1079, 2001 WL 1466731, at *1 (5th Cir. 2001) (per curiam)

The Bryants have the burden of showing that qualified immunity does not apply. *Terwilliger v. Reyna*, --- F.4th ---, 2021 WL 2850052 (5th Cir. 2021) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). At the motion-to-dismiss stage, the "crucial question is 'whether the complaint pleads facts that, if true, would permit the inference that [the] [d]efendants are liable under § 1983 . . . and would overcome their qualified immunity defense.'" *Id.* at *3 (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015)). "The court has an obligation to . . . carefully scrutinize the complaint," and determine whether, "at the time of the events underlying the litigation, insufficient precedent existed to provide [the] school officials with 'fair warning' that [their] conduct violated [G.L.'s constitutional rights]." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (quotation marks and citations omitted; brackets altered). The complaint must "plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

The Bryants cite *Goss v. Lopez*, 419 U.S. 565 (1975), and *Board of Regents v. Roth*, 408 U.S. 564 (1972). In *Goss*, the Supreme Court concluded that, to suspend a student for up to 10 days without violating the Due Process Clause, the school must provide "effective notice and [an] informal hearing permitting the student to give his [or her] version of events." *Id.* at 583–84. The Court "ma[de] it clear" that it did not address suspensions exceeding 10 days. *Id.* at 584. *Goss* does not detail the due-process requirements for a 45-day, or 25-day, suspension of a student. In any event, the amended complaint alleges that the Bryants met with Hadnot and discussed the incident between G.L. and J.M. before Hadnot suspended G.L., which satisfies *Goss*.

---

(unpublished) (citations omitted), the defendants do not assert the defense against the Bryants' statutory claims.

*Roth* is even further from this case. That case involved a nontenured faculty member at a state university who was dismissed from his position. *Roth*, 408 U.S. 564. The Supreme Court determined that the dismissal did not violate due process because the plaintiff lacked a protected property or liberty interest in his continued employment. *Id. Roth* does not address a student's procedural rights relating to suspension from school.

Neither *Goss* nor *Roth* support an inference that the individual defendants had "fair warning" that, when notice and an informal hearing preceded the suspension and two appellate hearings followed it, failing to grant a third appellate hearing on the student's suspension after the student had left the school district was unconstitutional. *Longoria*, 942 F.3d at 264 (quotation marks omitted).

The Bryants argue that qualified immunity "is, and should be held to be, a legally impermissible defense." (Docket Entry No. 16 at 12 n.53). The Bryants include this wholesale challenge to qualified immunity in their response "to assure that, if legally necessary, the qualified immunity abrogation or limitation issue has been preserved." (Docket Entry No. 14 at 12 n.53). The Bryants may continue their challenge to qualified immunity before the Fifth Circuit and beyond, but this court is bound by existing precedent. Qualified immunity applies to the § 1983 claims against the individual defendants, and they are dismissed, with prejudice, because further amendment would be futile.

### G.     The "Application and Request for Declaratory Relief"

Citing the Declaratory Judgment Act, 28 U.S.C. § 2202, and the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.001, *et seq.*, the amended complaint seeks:

> [A] declaratory judgment to determine whether [Dayton ISD] followed its own written rules and procedures with regards to the non-punishment of student J.M. after he physically assaulted and sexually harassed . . . G.L., the vindictive punishment of . . . G.L., and the refusal of Defendant Hadnot to investigate . . . G.L.'s claims of sexual harassment and

assault, which incorporate Texas and Federal law, in determining whether a student can be suspended or transferred to an alternative campus without such a finding.

(Docket Entry No. 6 at ¶ 43).

The defendants argue that the court lacks subject-matter jurisdiction over this claim because Texas has not waived governmental immunity for declaratory judgment claims. (Docket Entry No. 14 at 8–9). Declaratory judgment claims brought under Texas law against a governmental entity "will ordinarily be barred by immunity, thereby divesting the trial court of jurisdiction, unless the [Texas] Legislature has waived immunity as to the subject matter of the claim." *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 530 (Tex. App.—Austin 2014, no pet.); *see Robison v. CNA Ins. Co.*, No. 1:17-cv-508, 2018 WL 10604116, at *6 (E.D. Tex. May 9, 2018) ("Governmental immunity defeats a court's jurisdiction." (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015))).

The Bryants have the burden of showing that governmental immunity does not apply, *Robison*, 2018 WL 10604116, at *6 (citing *Ryder*, 453 S.W.3d at 927), and they have not done so. The amended complaint does not identify a statute or state constitutional provision allowing the state-law declaratory judgment claim to proceed against Dayton ISD. The court lacks subject-matter jurisdiction over that claim and dismisses it, without prejudice.

The Bryants respond that federal declaratory relief is available because they have asserted constitutional and federal statutory claims. Of the claims asserted in the amended complaint, only the claims against Dayton ISD for intentional discrimination under the ADA and the Rehabilitation Act remain. The Bryants' request for declaratory relief is not based on, or related to, those claims. Rather, the declaratory relief they seek is tied to their due-process claim, which has been dismissed, with prejudice. The Declaratory Judgment Act "does not of itself confer jurisdiction on the federal courts." *Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 343 (5th Cir. 2021) (quoting *Jolly v. United States*,

24

488 F.2d 35, 36 (5th Cir. 1974)).  Because the only remaining claims are under the ADA and the Rehabilitation Act, and the declaratory relief sought is not related to those claims, the court lacks subject-matter jurisdiction to issue the requested declaratory relief.  *See Caldera v. Cty. of El Paso, Tex.*, 520 F. Supp. 2d 846, 853 (W.D. Tex. 2007) (the court had supplemental jurisdiction over the declaratory judgment claim because it arose from the same alleged conduct as the plaintiff's FMLA claim); *Rivero,* 1 F.4th at 343–44 ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (quotation marks omitted)).  The federal declaratory judgment claim is dismissed, without prejudice.

### H.      The "Application for Temporary Injunction"

The amended complaint includes an "application for temporary injunction," asking the court to:

> issue a temporary injunction against [the] [d]efendants requiring it to rescind the transfer order requiring . . . G.L. to attend [Dayton ISD's] alternative school and return . . . G.L. to a Texas public high school of his choice to continue his education in person and he be able to participate in extracurricular activities during the pendency of this cause of action in order to maintain the status quo herein.

(Docket Entry No. 6 at ¶ 45).  The Bryants have not moved for an injunction, and the parties have not briefed the merits of injunctive relief.  Nonetheless, the defendants argue that the court lacks subject-matter jurisdiction over the request for injunctive relief.

The injunctive relief sought is irrelevant to the ADA and Rehabilitation Act claims for intentional discrimination that remain.  The amended complaint does not allege that G.L. was suspended based on his disability.  Indeed, the amended complaint does not allege that the defendants required G.L. to withdraw or attend a different high school.  Because the injunctive relief requested is not tied to the remaining claims, the court lacks jurisdiction to provide that relief.

The request for injunctive relief not related to the disability discrimination claims under the ADA and Rehabilitation Act claims is dismissed, without prejudice.

**IV.     Conclusion**

The defendants' motion to dismiss the first amended complaint, (Docket Entry No. 14), is granted in part and denied in part.   The following claims are dismissed, with prejudice: (1) the state-law tort claims; (2) the Rehabilitation Act claims against the individual defendants; (3) the hostile-educational-environment claim under the Rehabilitation Act; (4) the FERPA claim; and (5) the § 1983 claims.  The requests for declaratory and injunctive relief are dismissed, without prejudice.  The claims for intentional discrimination based on disability under the ADA and the Rehabilitation Act remain.

A scheduling and status conference is set for **August 27, 2021, at 10:00 A.M. in Courtroom 11B.**

SIGNED on August 11, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

26